## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 07 2019, 9:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of J.B. (Minor Child),

and

L.V. (Mother),
*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

June 7, 2019

Court of Appeals Case No.
18A-JT-2698

Appeal from the Fayette Circuit Court

The Honorable Hubert Branstetter Judge

Trial Court Cause No.
21C01-1711-JT-440

**Tavitas, Judge.**

# Case Summary

[1] L.V. ("Mother") appeals following the termination of her parental rights to J.B. ("the Child"). We affirm.

# Issue

[2] Mother's sole issue on appeal is whether the trial court abused its discretion in denying Mother's motion to continue the termination fact-finding hearing.

# Facts

[3] Mother and C.B. ("Father") are the biological parents of the Child, who was born in September 2009. The Fayette County Department of Child Services ("DCS") received an allegation that: (1) Mother and Father administered inappropriate discipline to the Child; (2) Mother and Father used methamphetamine while the Child was in their care; and (3) Father faced criminal charges of battery to person under fourteen years of age. DCS removed the Child from Mother's and Father's care on an emergency basis on June 30, 2016.[1]

[4] On July 5, 2016, DCS filed a petition alleging that the Child was a child in need of services ("CHINS"). On November 22, 2016, after a hearing, the trial court adjudicated the Child as a CHINS. The trial court granted wardship of the Child to DCS pursuant to a dispositional order on December 5, 2016. Pursuant

---

[1] The Child has not returned to Mother's or Father's care since her removal.

to the dispositional order, Mother was ordered to: (1) refrain from drug use; (2) submit to random drug screens; (3) obey the law; (4) maintain contact with DCS; (5) submit to unannounced home visits; (6) maintain suitable housing; (7) secure steady employment; (8) complete a parenting assessment and substance abuse assessment; (9) participate in home-based counseling; (10) attend supervised visitation; and (11) provide a safe and secure environment for the Child.

During the pendency of the CHINS matter, Mother was largely non-compliant with DCS's case plan. Mother's substance abuse continued largely unabated. She refused drug screens and tested positive numerous times for "unprescribed amphetamines and methamphetamines." Tr. p. 41. Mother was arrested "a few times" and was "in and out of jail for her continued substance abuse" during the CHINS pendency. *Id*. at 41-42. Service providers discharged Mother from services for her lack of engagement. Mother failed to maintain contact with DCS, did not attend supervised visits with the Child, and failed to appear for scheduled review and permanency hearings.

On November 14, 2017, DCS filed a petition to terminate Mother's parental rights. The termination fact-finding hearing was initially scheduled for February 12, 2018. Mother moved for a continuance, which was granted. The termination fact-finding hearing was rescheduled and, again, Mother moved for a continuance on April 17, 2018, which was granted. On June 26, 2018, Mother sought a third continuance, which was granted on July 10, 2018.

Mother filed a fourth motion to continue on July 11, 2018, which was granted on August 10, 2018.

[7] The trial court ultimately re-set Mother's fact-finding hearing for October 2, 2018. Mother did not appear, but she was represented by counsel. At the outset of the hearing, DCS advised the trial court that:

> [DCS] [ ] did file and mail out a notice of the hearing to terminate the parent-child relationship and that was mailed out on [ ] September 20, 2018 and it was file stamped September 19th of 2018 [ ] and that was mailed to [M]other's [ ] last known mailing address which is [redacted] and that's in accordance with the Certificate of Service that was also filed with that [ ] notice of hearing . . . .

Tr. p. 13. Counsel for DCS also advised the trial court that "[Mother] was in some contact with the family case manager [ ] at the end of last week[,]" and the family case manager was prepared to testify that Mother was aware of the fact-finding hearing. *Id.*

[8] Counsel for Mother advised the trial court that, on August 13, 2018, he sent a letter to Mother notifying her of the hearing date. Citing Mother's absence, counsel for Mother then moved for a fifth continuance. DCS objected, and the trial court denied the motion for continuance. Counsel for Mother did not allege lack of statutory notice of the termination fact-finding hearing.

[9] DCS called witnesses and presented evidence in Mother's absence. Father, who was incarcerated at the time of the fact-finding hearing, was present and testified. Family case manager Molly Parkhurst testified that she had spoken

with Mother the day before the fact-finding hearing: "[Mother] just told [Parkhurst] that [Mother] wanted to go to rehab, that [Mother] needed to go to rehab [ ], and that [Mother] had a[n] [active] warrant" for violation of probation. *Id.* at 38. Parkhurst testified further that Mother's absence was not due to incarceration.

[10] Defense counsel lodged an objection to the termination fact-finding hearing proceeding in Mother's absence and stated, "I'm in a difficult position. I have a client who's not here today. It's very [] important part of her life and it's a very significant hearing in having it without her is uncomfortable." *Id.* at 44. On October 16, 2018, the trial court entered an order, containing findings of fact and conclusions of law, wherein the court terminated Mother's parental rights to J.B. Mother now appeals.

## Analysis

[11] Mother argues that the trial court erred in denying her motion to continue the termination fact-finding hearing. The Fourteenth Amendment to the United States Constitution protects the traditional rights of parents to establish a home and raise their children. *In re K.T.K. v. Indiana Dept. of Child Services, Dearborn County Office,* 989 N.E.2d 1225, 1230 (Ind. 2013). "[A] parent's interest in the upbringing of [his or her] child is 'perhaps the oldest of the fundamental liberty interests recognized by th[e] [c]ourt[s].'" *Id.* (quoting *Troxel v. Granville,* 530 U.S. 57, 65, 120 S. Ct. 2054 (2000)). We recognize, of course, that parental interests are not absolute and must be subordinated to the child's best interests

when determining the proper disposition of a petition to terminate parental rights. *Id.* Thus, "'[p]arental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities by failing to provide for the child's immediate and long-term needs.'" *In re K.T.K.,* 989 N.E.2d at 1230 (quoting *In re D.D.,* 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*).

[12] When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *In re C.G.,* 954 N.E.2d 910, 923 (Ind. 2011). We consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* We must also give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *Id.* (quoting Ind. Trial Rule 52(A)).

[13] "Generally speaking, a trial court's decision to grant or deny a motion to continue is subject to abuse of discretion review." *In re K.W.*, 12 N.E.3d 241, 244 (Ind. 2014). An abuse of discretion may be found in the denial of a motion for a continuance when the moving party has shown good cause for granting the motion; however, no abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial. *Rowlett v. Vanderburgh Cty. Office of Family & Children*, 841 N.E.2d 615, 619 (Ind. Ct. App. 2006) (internal citations omitted), *trans. denied*.

[14] Mother argues that, by allowing the termination fact-finding hearing to proceed in her absence, the trial court allowed a "fundamentally unfair" and

"prejudicial" proceeding, at which "no one testified that [Mother] knew about the hearing"; no one attempted to reach Mother by telephone; Mother's counsel "presented no evidence on Mother's behalf[;] and Mother's counsel made a brief closing argument primarily about Father." Appellant's Br. p. 10. We cannot agree.

[15] Parents do not have a constitutional right to be present at a termination hearing. *K.W.*, 12 N.E.3d at 249. Indiana Code Section 31-35-2-6.5 does require that DCS "shall" send notice to a parent at least ten days before the termination of parental rights fact-finding hearing. We have previously stated: "[f]ailure to comply with statutory notice is [ ] a defense that must be asserted[;] [o]nce placed in issue, [DCS] bears the burden of proving compliance with the statute." *In re H.K.*, 971 N.E.2d 100, 103 (Ind. Ct. App. 2012).

[16] In seeking the continuance, counsel for Mother did not argue that DCS failed to make proper statutory notice. After DCS introduced evidence of its compliance with the statutory notice requirement, coupled with FCM Parkhurst's testimony that she believed that Mother had notice of the hearing, counsel for Mother advised the trial court that he, too, mailed notice of the hearing to Mother in advance of the termination fact-finding hearing. Moreover, although Mother expresses her dissatisfaction with counsel's efforts on her behalf, the fact remains that Mother's counsel appeared and cross-examined DCS's witnesses on her behalf at the termination fact-finding hearing. *See In re E.E.*, 853 N.E.2d 1037, 1044 (Ind. Ct. App. 2006) (determining that the trial court did not deprive

a parent of due process by proceeding with a termination hearing in the parent's absence where the parent's counsel participated in the hearing), *trans. denied*.

[17] Mother relies heavily upon our Supreme Court's discussion of the absence of a parent from termination proceedings in *K.W.* In *K.W.*, the mother was incarcerated and sought continuance of her termination fact-finding proceedings until her release in approximately two weeks. The trial court denied the mother's motion for a continuance and conducted the termination fact-finding hearing in the mother's absence, which resulted in the termination of the mother's parental rights.

[18] On appeal, we affirmed, citing overwhelming evidence supporting the termination of the mother's parental rights. We also acknowledged that, although the mother's counsel could have done more to secure her participation through alternative means, "'counsel's performance was not so defective as to warrant a different outcome' in light of the evidence presented at the termination hearing." *K.W.*, 12 N.E.3d at 243. Our Supreme Court granted transfer and subsequently vacated the portion of the trial court's order that terminated the mother's parental rights, finding that the proceedings were fundamentally unfair, prejudicial, and failed to comport with standards of due process.

[19] In analyzing the mother's claim in *K.W.*, our Supreme Court employed the eleven-factor test it adopted in *In Re C.G., Z.G. v. Marion Cnty. Dep't of Child Servs.*, 954 N.E.2d 910, 922 (Ind. 2011), albeit in the context of reviewing a

motion to transport an incarcerated parent to a termination fact-finding hearing. The *K.W.* Court acknowledged the factual distinctions between *K.W.* and *C.G.*, but found that the *C.G.* test "illuminate[d] [ ] review of whether [the mother] showed good cause why her motion [for continuance] should be granted or if the denial was otherwise 'clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable and actual deductions to be drawn therefrom.'" *Id.*

[20] The *C.G.* factors are as follows:

> (1) [t]he delay resulting from parental attendance; (2) the need for an early determination of the matter; (3) the elapsed time during which the proceeding has been pending; (4) the best interests of the child(ren) in reference to the parent's physical attendance at the termination hearing; (5) the reasonable availability of the parent's testimony through a means other than his or her attendance at the hearing; (6) the interests of the incarcerated parent in presenting his or her testimony in person rather than by alternate means; (7) the [e]ffect of the parent's presence and personal participation in the proceedings upon the probability of his or her ultimate success on the merits; (8) the cost and inconvenience of transporting a parent from his or her place of incarceration to the courtroom; (9) any potential danger or security risk which may accompany the incarcerated parent's transportation to or presence at the proceedings; (10) the inconvenience or detriment to parties or witnesses; and (11) any other relevant factors.

*Id.* We address the relevant factors in turn.

[21] Factor (1)—delay resulting from parental attendance—is difficult to quantify because Mother failed to appear of her own volition, and not due to an

incarceration of finite duration, as in *K.W.* Regarding factor (2), the need for an early determination of the matter, although there was no specific urgency, the Child was nine years old and in need of permanency, after a two-and-one-half-year CHINS pendency.

[22] As to factor (3), the elapsed time during which the proceeding was pending, the CHINS matter remained pending from June 2016 through October 2018; and specifically, the fact-finding hearing—initially scheduled for February 2018—did not occur until October 2018, due to Mother's four continuances. Regarding factor (4), the effect of Mother's presence on the best interest of the Child, we find that the Child's need for permanency weighs against Mother's need for a fifth continuance.

[23] As to factor (5), the reasonable availability of Mother's testimony through alternate means, we find that her counsel should have attempted to secure her telephonic participation. This factor weighs in Mother's favor. Regarding factor (6), the interests of the incarcerated parent in presenting his or her testimony in person, rather than by alternate means, Mother undeniably had a significant interest in presenting testimony in person, rather than via alternative means; however, as noted above, Mother's absence was of her own volition.

[24] Regarding the seventh factor—the effect of Mother's absence and participation on her likelihood to succeed on the merits—the record is clear that Mother was largely unsuccessful in complying with DCS's case plan and was discharged by various service providers for her lack of engagement. Although Mother would

have faced a daunting challenge in making her case, her presence—to provide explanations and context—would have surpassed what defense counsel could accomplish in her absence.

[25] Factors (8) and (9) are inapplicable here; we proceed to the tenth factor – the inconvenience or detriment to the parties or witnesses. Here, Mother moved for, and the trial court granted, four continuances of the termination fact-finding. Mother, thereby, delayed the trial court's permanency determination as to the Child and the Child's relative/pre-adoptive caregiver. Mother also repeatedly inconvenienced the witnesses, including caseworkers and service providers, as well as the attorneys involved.

[26] After weighing the instructive *C.G.* factors, we conclude that the trial court's denial of Mother's motion for a continuance was not clearly against the logic and effect of the circumstances before the court. The instant case is factually distinguishable from *K.W.* *K.W.* involved a parent whose incarceration thwarted her ability to participate in the termination fact-finding hearing involving her child. The *K.W.* Court deemed it fundamentally unfair and prejudicial for a termination fact-finding hearing to be conducted in the mother's *involuntary* absence. Here, Mother received notice but apparently elected against attending the fact-finding hearing because she had an active warrant. Unlike the *K.W.* matter, which "had not been overly drawn-out or delayed," the termination fact-finding hearing in the instant case was considerably delayed. *Id*. at 248.

After weighing the instructive C.G. factors, we conclude that the trial court's denial of Mother's motion for a continuance was not clearly against the logic and effect of the circumstances before the court. We decline to find that the trial court's denial of Mother's fifth motion for a continuance rendered the proceedings fundamentally unfair, prejudicial, or contrary to standards of due process.

# Conclusion

The trial court did not abuse its discretion in denying Mother's motion to continue the termination fact-finding hearing. We affirm.

Affirmed.

Crone, J., and Bradford, J., concur.